**William T. SCHOR, Petitioner,**

**v.**

**COMMODITY FUTURES TRADING COMMISSION,**

**and**

**ContiCommodity Services, Inc.**

**and**

**Richard L. Sandor, Respondents.**

**MORTGAGE SERVICES OF AMERICA, Petitioner,**

**v.**

**COMMODITY FUTURES TRADING COMMISSION,**

**and**

**ContiCommodity Services, Inc.**

**and**

**Richard L. Sandor, Respondents.**

**Nos. 83–1703, 83–1704.**

United States Court of Appeals, District of Columbia Circuit.

Aug. 13, 1985.

Before GINSBURG, Circuit Judge, Mac-KINNON, Senior Circuit Judge, and PARKER *, United States District Judge for the District of Columbia.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Opinion PER CURIAM.

PER CURIAM:

■ In *Schor v. Commodity Futures Trading Commission*, 740 F.2d 1262 (D.C. Cir.1984), we concluded that the Commodity Exchange Act (CEA or Act)[1] did not empower the Commodity Futures Trading Commission (CFTC or Commission) to adjudicate traditional contract claims governed by state law. In particular, *Schor* entailed two matters: first, a customer's charges that a broker had violated the CEA and CFTC regulations thereunder; and second, a counterclaim by the broker for the debit balance in the customer's account. With one exception, we affirmed the CFTC's dismissal of the customer's charges. We held, however, that Congress had not authorized the Commission to entertain claims or counterclaims other than those alleging violations of the Act or CFTC regulations.[2] Accordingly, we instructed the

Commission to dismiss the broker's common law breach of contract counterclaim for want of subject matter jurisdiction. On July 2, 1985, the Supreme Court vacated our judgment in *Schor* and "remanded for further consideration in light of *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. ——, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)." Upon further consideration, we reinstate our judgment in *Schor*.

*Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. ——, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), involved a pesticide registration scheme precisely and completely ordered by Congress in the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136–136y (1982 & Supp. I 1983). As a means of resolving certain disputes among registrants regarding compensation for which FIFRA provided, Congress crafted a binding arbitration arrangement with limited judicial review. 473 U.S. ——, 105 S.Ct. at 3329. The Supreme Court held that Article III of the Constitution did not prohibit Congress from employing a binding arbitration mechanism in the federal regulatory regime. Distinguishing *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Court in *Thomas* heavily emphasized that the FIFRA case arose entirely within the confines of federal law, and that a federal rule of decision, exclusively, was at stake.[3]

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. 7 U.S.C. §§ 1–22 (1976). *Schor* was governed by the Act as it was amended in 1974. *See* Commodity Futures Trading Commission Act of 1974, Pub.L. No. 93–463, 88 Stat. 1389. Congress further revised the Act in 1983. *See* Futures Trading Act of 1982, Pub.L. No. 97–444, 96 Stat. 2294 (1983). The latter revision became effective in May 1983; it was not in force in 1980 and 1981 when this case was heard and decided by an administrative law judge (ALJ). *See Schor v. Commodity Futures Trading Comm'n*, 740 F.2d 1262, 1264–65 & n. 1 (D.C.Cir. 1984).

2. We noted that, at the time of Schor's trading and the ALJ's decision, *see supra* note 1, the Act

contained only one reference to counterclaims—in a subsection then dealing solely with the bond required of complainants not residing in the United States. 740 F.2d at 1278. We further observed that in the most recent revision of the CEA, Congress, while not itself prescribing the content of counterclaims, provided that " '[t]he Commission may promulgate ... rules, regulations, and orders ... [which] may prescribe ... the nature and scope of ... counterclaims.' 7 U.S.C. § 18(b) (1982)." 740 F.2d at 1280.

3. Observing that "federal law supplies the rule of decision," 473 U.S. at ——, 105 S.Ct. at 3335, the Court clarified, correlatively, that the claims presented in *Thomas* for compensation under FIFRA were not a "matter of state law," and

We note in addition that in *Thomas*, there was no doubt as to the legislature's will. Congress had furnished a detailed design. *See* 473 U.S. at ——, 105 S.Ct. at 3329. The Court's task was not to divine what FIFRA meant, for the statute, on the matter at issue, appeared entirely clear.[4] *Thomas* thus presented, cleanly, a question of the compatibility of the scheme Congress crafted with Article III constraints on the lawmaker.[5]

Because the dispute in *Thomas* arose "in the context of a federal regulatory scheme that virtually occupie[d] the field,"[6] we are unable to find in that case reasoning that would lead us to a different result in *Schor*. The broker's common law counterclaim in *Schor*, in marked contrast to the compensation controversy in *Thomas*, entailed no claim "created by the administrative state";[7] indeed, the plea for the debit balance in the customer's account did not stem from any law prescribed by Congress. Rather, "state law created the [contract] right and provided the rule of decision as between [broker and customer], irrespective of the existence of the [CEA]."[8] In sum, the *Schor* counterclaim presented, as

the *Thomas* dispute did not, "a traditional contract action,"[9] a garden variety matter of state common law.

Moreover, the CFTC's asserted authority to adjudicate a common law counterclaim derived from a Commission procedural rule, not from any explicit instruction stated by Congress in the text of the CEA. As we pointed out in our *Schor* opinion, the Commission urged jurisdiction apparently "unique in the federal system."[10] However swift and economical Commission adjudication might be, neither the CFTC nor this court was "aware of any other agenc[y] that expressly render[s] decisions and issue[s] awards on common law claims."[11] If Congress had meant to confer upon the CFTC such unprecedented authority, some clear words to that effect, it seemed to us, would have been spoken in legislative chambers, and written into the statute as a direction for the Commission and the courts.[12]

We recognized in *Schor* that the Article III inquiry made in *Northern Pipeline* involved examination of decisions that "do not admit of easy synthesis."[13] Because

"[did] not depend on or replace a right to . . . compensation under state law." *Id.; see also id.* at ——, 105 S.Ct. at 3341 (Brennan, J., concurring in the judgment) (*Thomas* arises entirely within the confines of the FIFRA).

**4.** The Court pointed out that Congress had deliberately crafted the right and "select[ed] arbitration as the appropriate method of dispute resolution" in response to "the danger to public health of further delay in pesticide registration." 473 U.S. at ——, 105 S.Ct. at 3338.

**5.** The federal "nature of the right at issue" was plain, as were "the concerns motivating the legislature." 473 U.S. at ——, 105 S.Ct. at 3338.

**6.** 473 U.S. at ——, 105 S.Ct. at 3343 (Brennan, J., concurring in the judgment).

**7.** *See* 473 U.S. at ——, 105 S.Ct. at 3334 (citing Monaghan, Marbury *and the Administrative State,* 83 COLUM.L.REV. 1 (1983)).

**8.** *See* 473 U.S. at ——, 105 S.Ct. at 3342 (Brennan, J., concurring in the judgment).

**9.** *See* 473 U.S. at ——, 105 S.Ct. at 3335 (*Northern Pipeline* held "that Congress may not vest in a non-Article III court the power to adjudicate,

render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review").

**10.** 740 F.2d at 1280 (quoting Supplemental Brief of ContiCommodity Services, Inc. at 20 n. 10). The CFTC had initially proposed a counterclaim rule limited to pleas based on alleged violations of the CEA or its implementing regulations. The Commission did so because it thought a "substantial question" existed concerning its authority to make awards on matters other than CEA infractions. *See* 740 F.2d at 1279.

**11.** 740 F.2d at 1280 (quoting Supplemental Brief of CFTC at 16 n. 13).

**12.** Congress, had it envisioned CFTC jurisdiction over common law contract claims, might have considered whether judicial review should be encumbered, as it is under the CEA, by the requirement of an appeal bond in double the amount awarded by the Commission. *See* 740 F.2d at 1266 n. 9.

**13.** 740 F.2d at 1269 (quoting *Northern Pipeline,* 458 U.S. at 91, 102 S.Ct. at 2881 (Rehnquist, J., concurring in the judgment)).

Congress had not addressed the matter of the CFTC's authority over state common law claims specifically, if at all, we construed the CEA in a manner that avoided the constitutional issue.[14] We understand the CFTC's argument that comprehensive Commission jurisdiction would be highly efficient. We remain persuaded, however, that the matter is one properly placed—forthrightly, fully, and in the first instance—before Congress. Nothing in the *Thomas* decision alters our view in that regard.[15] We therefore reinstate our judgment.

*It is so ordered.*

---

14. 740 F.2d at 1269, 1281. In this, we followed principles of interpretation set out by Justice Brandeis in *Ashwander v. TVA*, 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), and regularly adhered to by the federal courts. *See, e.g., NLRB v. Catholic Bishop*, 440 U.S. 490, 500–01, 99 S.Ct. 1313, 1318–19, 59 L.Ed.2d 533 (1979).

15. Our decision in *Schor* was made in the light of supplementary briefing that comprehensively aired the parties' positions. *See* 740 F.2d at 1269 & nn. 17–18. The Commission and the broker rehearsed those arguments again in petitions for rehearing. Because we find the distinctions between *Thomas* and *Schor* so sharp—based on the federal source of the governing law in *Thomas* and the state source in *Schor*, as well as on the clear blueprint Congress drew for *Thomas* but not for *Schor*—we did not call for yet another round of briefing in our court. In our view, ultimate resolution of this controversy should not be detained by another stop in a forum not positioned to modify or elaborate further on the holding in *Northern Pipeline*.